# IN THE COURT OF APPEALS OF IOWA

No. 20-0138
Filed April 15, 2020

**IN THE INTEREST OF A.C.,**
**Minor Child,**

**J.C., Father,**
    Appellant,

**K.C., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic,

District Associate Judge.


The mother and father separately appeal the termination of their parental

rights to their child.  **AFFIRMED ON BOTH APPEALS.**


Becky Wilson of Elwood, O'Donohoe, Braun, White, LLP, Charles City, for

appellant father.

Ann M. Troge, Charles City, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee State.

Cynthia S. Schuknecht of Noah, Smith, Schuknecht & Sloter, P.L.C.,

Charles City, attorney and guardian ad litem for minor child.


Considered by Bower, C.J., and Greer and Ahlers, JJ.

**GREER, Judge.**

The mother and father separately appeal the termination of their parental rights to their one-year-old child, A.C. The juvenile court terminated both parents' rights under paragraphs (h) and (*l*) of Iowa Code section 232.116(1) (2019) and also terminated the father's rights under paragraph (e). Here, the mother challenges one of the statutory grounds, argues additional time for reunification is warranted, and asks that a permissive factor be applied to save the parent-child relationship. The father challenges two of the statutory grounds for termination, argues the State failed to make reasonable efforts at reunification, and asks that a permissive factor be applied to save the parent-child relationship.

We consider each of the appeals separately. Our review is de novo. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

**I. Mother's Appeal.**

The mother's parental rights were terminated under Iowa Code section 232.116(1)(h) and (*l*). The mother only challenges the sufficiency of the evidence supporting the statutory grounds for (*l*), which means she has waived any challenge to termination under paragraph (h). *See* Iowa R. App. P. 6.903(2)(g)(3); *see also Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("[O]ur review is confined to those propositions relied upon by the appellant for reversal on appeal."). Without further consideration, we agree with the juvenile court ruling that termination under paragraph (h) is appropriate. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("[W]e may affirm the juvenile court's order on any ground we find supported by the record.").

The mother asks for six more months to work toward reunification with A.C. The court may delay permanency by six months when it can "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). The juvenile court determined it could not do so, and we agree.

A.C. tested positive for methamphetamine at her birth in late 2018. The mother admitted using the drug while pregnant. In June 2019, the mother was diagnosed with stimulant use disorder, amphetamine type substance, severe. Despite the diagnosis, the mother neglected to follow the treatment recommendations. And the mother continued to use methamphetamine. At the January 8, 2020 termination hearing, the mother testified that she last used methamphetamine in early November 2019. She suggested that her use in November was a relapse and she had not used for a "long time" before then. But the mother also tested positive for methamphetamine in September 2019. She then missed all of her requested drugs tests in October before self-reporting she used in early November.[1] The mother attended only one requested drug test

---

[1] It seems the mother's self-reporting coincided with being asked to drug test. At the termination trial, the mother was asked about the several drug tests she missed. She testified:

> I have been—I've tried to go to some of them. The ones that I haven't gone to, the first one [the family safety, risk, and permanency worker] was lying about; and then I did go and I have a video to prove that I was there with the time and everything and nobody was there; and then the other time was supposed to go after that, I had to work, and I was, like, on the phone with [the social worker] at my job, like, I was trying to go and I got there three minutes late so I wasn't able to do drug testing; and then the other one I went to was supposed to be a hair stat and I walked out because I used in November and I wanted

between her self-reported use in November and the January 8 termination hearing. Because of the mother's issues involving dishonesty and her failure to drug test as requested, we cannot say her November use of methamphetamine was a relapse, nor can we say for certain that it was an isolated instance. And the mother continued to be in contact with the father, in spite of his continued drug use and violence in their relationship. We recognize that the mother, who was only eighteen years old at the time of the termination hearing, made progress by getting her own apartment and maintaining several months of steady employment. But we cannot say A.C. could be returned to her care in six months.

Finally, the mother argues an exception to termination should be applied to save the parent-child relationship. She maintains both paragraph (a) and (c) of section 232.116(3) apply. Section 232.116(3)(a) provides that the court need not terminate when "[a] relative has legal custody of the child." While the maternal grandmother cared for A.C. throughout the proceedings, legal custody of the child remained with the Iowa Department of Human Services (DHS). So this factor does not apply. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (providing that while the child was in the care of the maternal grandparents, section 232.116(3)(a) did not apply because the child was "not in the legal custody of [the] grandparents").

---

it to come back negative, but that's when I turned myself in—or, like, self-reported.

When asked if she self-reported only after finding out about the hair-stat test, the mother responded:

No, that's not what I meant. I self-reported to [my behavioral-health provider] or whatever and then there was a hair stat but I just left because I don't want to lose my daughter, but I told her first is what I meant, and then, like, when I was at the hair stat, when I went to drug testing and there was a hair stat, I left.

Section 232.116(3)(c) provides that the court need not terminate when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." While the mother maintained frequent, yet sporadic, contact with the child, it was because she lived with A.C. along with the maternal grandmother the first several months of the case. And it was because she continued to visit A.C. whenever the maternal grandmother was able and willing to supervise. But the record lacks evidence that termination of the mother's parental rights would be detrimental to A.C., and it is the mother's burden to prove an exception to termination is warranted. *See In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018).

We affirm the termination of the mother's parental rights.

**II. Father's Appeal.**

The father's parental rights were terminated under Iowa Code section 232.116(1)(e), (h), and (*l*). Like the mother, the father does not challenge any of the strict substantive elements of paragraph (h). But he maintains DHS failed to make reasonable efforts to reunite him with A.C. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) ("[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination. Instead, the scope of the efforts by [DHS] to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts."). "The State must show reasonable efforts as part of its ultimate proof the child cannot be safely returned to the care of a parent." *Id.*; *accord* Iowa Code § 232.116(1)(h)(4).

The State has the burden to prove it made reasonable efforts as part of its case during the termination hearing. But to preserve this issue for our review, the

father "had the obligation to demand other, different or additional services prior to the termination hearing." *In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999). In his brief on appeal, the father blames his lack of visits with A.C. from July 2019 through the termination hearing on DHS's lack of motivation to facilitate visits. But the father never raised this issue with the juvenile court.[2] *See In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) ("If, however, a parent is not satisfied with DHS' response to a request for other services, the parent must come to the court and present this challenge."); *see also* Iowa Code § 232.99(3) ("The court shall advise the parties that failure to identify a deficiency in services or to request additional services may preclude the party from challenging the sufficiency of the services in a termination of parent-child relationship proceeding."). The father has not preserved the issue for our review.

While the father maintains he should be given additional time to work toward reunification with A.C.,[3] no evidence supports his ability to care for the child in six months. *See* Iowa Code § 232.104(2)(b). The father spent most of the time during these proceedings in jail or in a residential correctional facility (RCF). His release came about three weeks before the termination trial. In that time, he relapsed and failed to let DHS know he relapsed—though directed to do so by his parole officer. From mid-October until his release from the RCF, he failed to make contact with the service provider to set up visits with A.C. Once out of the RCF, he rejected

---

[2] The father has not pointed out, and we have not found, any motions filed or issues raised with the juvenile court on this issue.

[3] The father does not raise the issue of delaying permanency on its own. Yet he appears to raise it as part of his reasonable-efforts challenge and as part of his challenge to the statutory grounds under paragraph (e), so we address it.

visits scheduled at the library or any other public venue. Although the father maintained employment for several months and reported having an apartment appropriate for A.C. to visit, his continued use of illegal substances—even while on parole—prevents us from saying he could care for A.C. in the short term.

Next, the father maintains the exception to termination in section 232.116(3)(c) should be applied to save the parent-child relationship. The father had not seen one-year-old A.C. for about six months before the termination hearing. He offers nothing to support his claim that termination of his parental rights would be detrimental to the child. He has not met his burden to prove an exception is warranted here.

We affirm the termination of the father's parental rights.

**AFFIRMED ON BOTH APPEALS.**